### REED v. NORTHEASTERN RAILROAD COMPANY.

1. DEATH FROM INJURY—ACTIONS.—At common law a right of action for a tort died with the person injured, but under our statutes (Gen. Stat., §§ 2183–2186) a right of action and recovery for a personal injury resulting in death is given to the legal representative of the deceased for the benefit of certain dependent kindred against the party whose wrongful act caused such death, wherever the party injured, if he were still alive, could recover for such injury. Therefore, the right of action by the administrator is not defeated by the fact that the intestate had died instantly from the injury.

2. NEGLIGENCE—CAUSE OF ACTION.—A complaint states sufficient facts of negligence to constitute a cause of action, where it alleges that the death of plaintiff's intestate was caused by the derailment of defendant's train on a spur tract, resulting from the careless and negligent act of defendant in leaving open the switches leading to such spur track at a time when such train was properly passing on the main line.

3. DEATH FROM INJURIES—BENEFICIARIES—AMENDMENT.—In action by an administrator to recover damages for the wrongful killing of his intestate,

the naming, in the complaint, of one as beneficiary who is not entitled to recover, may be corrected by striking out such name, if those who are entitled to share in the distribution of the recovery are all properly mentioned.

4. SEVERAL CAUSES OF ACTION—PLEADINGS—ELECTION.—Where plaintiff states as his ground of complaint the negligence of defendant in leaving open switches, and the act of the engineer in running his train at a greatly excessive speed, the complaint states two causes of action, which should have been separately stated, and plaintiff may be required, on motion made, to state the two causes properly, or elect which he would retain for trial.

Before IZLAR and WALLACE, JJ., Berkeley, December, 1890, and June, 1891.

This was an action by Ophelia Reed, as administratrix, against the Northeastern Railroad Company, commenced October 4, 1890. In granting an order sustaining a demurrer to the complaint, Judge Wallace said:

I have been thinking about this matter since the argument was suspended yesterday afternoon, and it is one of very great perplexity to me. It is an exceedingly nice question. Of course, I must decide the issue as I think the law to be, without reference to the hardships or benefits to be derived from the decision itself. It sometimes happens that legislative power is imputed to a judge, when the only power that he has is to decide legal questions according to his best judgment of the law.

We all know, that at common law, an injury sustained by reason of a tort gave to an injured party a right of action for damages. But that right of action died with him, and did not survive to his personal representatives. Our statute, in section 2183, recognizes that principle of the common law, and says: "Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have

been caused under such circumstances as make the killing, in law, a felony."

Part of that section relates to the state of the law at the time this act was passed, and that simply means, that if, at the time this statute was adopted, the wrongful act was ground for the accrual of the right of action to any person, that in every such case, the person or corporation who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the party injured. Now, that simply meant to transfer to the representatives of the deceased whatever right the deceased would have had, if he had not died. That is, obviously, the object of it. Whether it meant to do more, we may see hereafter, but it certainly meant to do that. It certainly meant, that whatever right of action had accrued to the deceased before his death, survived to his personal representatives, under section 2183.

Now, in a case of instantaneous death, what, at common law, was the right of the person killed? I take it, we will all agree that no right of action can accrue to a dead man. A right of action can only accrue to a human being who is still alive. Now, let us take an illustration. Suppose a man strikes another with a stick and breaks his arm; that does not kill him, and, of course, a right of action for damages accrues to him. Suppose that, instead of breaking his arm with a stick, the man crushes in his skull with a great stone, and he is instantly dead, I take it, that a right of action could not accrue to him, because he is dead before the right of action matures. Then, it would seem to follow, that if a man is instantly killed by the neglect or default of another, a right of action could not accrue to him, for the reason that he is dead, and a right of action can not accrue to a dead man; so, now, taking this section as we have construed it—that it means to transfer to the personal representative of the deceased all the rights that the dead man had at the time of his death—if he is instantly killed, no right of action accrues to him, and none, therefore, is transmitted to his personal representative.

This view is sustained also by what we know to be the rights of personal representatives. We know that personal represent-

atives represent the goods and chattels, the rights and credits of the deceased. The personal representative steps into the shoes of the dead man just as he falls out of them dead; and whatever his personal rights were then, those are the rights of his personal representative, he being dead. So, under that section, as I have already said, the aim of it being to transfer to the representative the rights of the man who has died, he having no right of action when he has been instantly killed, because a right of action cannot accrue to a dead man, then it would seem that the personal representative could not bring any action under any right that the deceased had at the time of his death. The right of action of the personal representative is a transferred right, and the deceased, being instantly killed, acquired no right of action to transfer to his personal representative.

In construing this statute by our court, in the case of Price against the Railroad Co., in the opinion delivered by Judge McIver, these words occur: "It seems to us that, by the terms of section 2183, the capacity of the deceased to maintain an action based upon the injury which caused his death, is made the test of the right of the administrator to maintain the action provided by the statute." Under that decision, by our Supreme Court, in the construction of that very statute, if the deceased, at the time of his death, had no right of action, his personal representative cannot have a right of action arising under him. Now, does that section create a right of action in the personal representative? In the case of Price against the Railroad Co., the court says: "We have not deemed it necessary to go into the question much discussed elsewhere, as to whether the statute gives a new cause of action or simply continues the original cause of action accruing to the party injured, which would otherwise terminate with his life, enlarging its scope so as to embrace compensation for the injury resulting from the death; for our conclusion is drawn from the terms of the statute as evidencing the true intent of the legislature. We may say, however, that if the purpose was to create a new and independent cause of action, it is a little singular that the legislature should expressly provide, as it has done in section 2186, for the defeat of one

cause of action accruing to one person by the enforcement of another cause of action which had accrued to another person." 33 S. C., 562.

That view is still further fortified by section 2186, which says: "The provisions of the three preceding sections of this chapter shall not apply to any case where the person injured has, for such injury, brought action which has proceeded to trial and final judgment before his or her death," as going to show, that under section 2186 it was evident the legislature did not intend to create a new and independent cause of action, but only allowed the personal representative to enforce the original right of the deceased after he was dead, and when he had not enforced it in his lifetime.

I may add, that in my opinion the case, such as is alleged in this complaint, is not within the purview of the statute. It does not apply to cases of instantaneous killing. It applies only to such cases where the right of the injured person was in existence at the time of his death. If he had no right of action at the time of his death, his personal representative had none. It is my opinion, that in cases of instantaneous death, at common law, no right of action had accrued to the decedent, and no right of action in such cases is perpetuated to his personal representative, and that, therefore, Lord Campbell's act does not cover cases of instantaneous death. On that ground I will have to grant the motion.

I may add, that I would also grant it on the other ground. The allegation of negligence in the complaint is that the switch was not sufficiently secured—that the spur track was not sufficiently secured—that the engine, running at an improper rate of speed, entered on that "Y" track and on the spur track. All that is alleged as negligence. Negligence is a mixed question of law and fact. Can it be negligence for a railroad train to enter upon a "Y" track? What is it built for but to be entered upon? Can it be negligence for a train to enter on a spur track? What else is it built for? The allegation is, that the switch was left open. Why not leave it open? How do you know, from the allegations of the complaint, whether or not it ought to have been left open? The only allegation of negligence—as

negligence proper—is, that the train was running at an improper rate of speed, and while thus violating the rules of the company, it entered on this part of the railroad track. Why could it not just as well have been alleged that, running at an improper rate of speed, it ran off the track and was derailed? You might just as well predicate negligence on the building of the main track and leaving the switch open, as to predicate it on the building of a "Y" track and leaving it open. They are built to be left open. Running at an improper rate of speed is negligence if harm results, but the plaintiff here represents the wood-passer. We all know what a wood-passer is. He is a person who supplies the engine with fuel. It has been held in a number of cases, that the wood-passer and engineer are fellow-servants, and it is a well established principle of law in this State, that one cannot recover for the negligence of his fellow-servant.

I do not think the third ground is sufficient to sustain the demurrer, as the complaint could have been amended, and would have been, I think, if the case had gone on to trial.

Plaintiff appealed upon several grounds, which raised substantially the two points first stated and considered by the court, and the defendant relied upon the third ground stated and considered, and also appealed from the order of Judge Izlar refusing its motion, as stated by this court.

*Messrs. Mordecai* and *Gadsden*, for appellant.

*Mr. W. H. Fitzsimons*, contra.

Lord Campbell's act does not apply to instantaneous death. 14 S. C., 23; Schoul. Ex'ors, § 279; 2 Brev., 159; Wms. Ex'ors, 669; 1 Camp., 493; 95 U. S., 757; 25 Conn., 265; Whit. Sm. Negl., 443, note; Endl. Interp. Stat., 127; 12 Am. St. Rep., 867; 33 S. C., 556; 32 *Id.*, 142; Pierce Rail., 385; Whit. Sm. Negl., 430; 29 S. C., 167; 3 L. R. Q. B. Div., 555; 2 Keyes, 162; 28 Am. Rep., 729; 9 Cush., 108, 478. The only negligence complained of is that of a fellow-servant. 3 Mees. & W., 1; 1 McMull., 385; 4 Metc. (Mass.), 49; 109 U. S., 478; 11 S. E. Rep., 590; 12 *Id.*, 124; 21 S. C., 469; 27 *Id.*, 761; 34 Am.

& Eng. R. R. Cas., 76; 7 S. C., 408; 39 Fed. Rep., 754. There was error in bringing the action for the benefit of the mother of deceased. 32 S. C., 142; 18 S. C., 305. There was error in refusing the motion to have the complaint made more definite. 28 Am. & Eng. R. R. Cas., 170, 528; 30 S. C., 111, 227; 15 S. C., 29; 23 Am. & Eng. R. R. Cas., 297, note; 12 Am. St. Rep., 435; 81 Am. Dec., 370; 18 Am. & Eng. R. R. Cas., 188; 32 *Id.*, 123; 16 *Id.*, 171.

November 22, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This action came on for trial before his honor, Judge Wallace, and a jury, at the June, 1891, term of the Court of Common Pleas for Berkeley County. The complaint was as follows:

1. That the defendant is a corporation duly incorporated under the laws of this State, and as such is the owner of a certain railroad known as the Northeastern Railroad, together with the tracks, cars, locomotives, and other appurtenances thereto belonging, between the city of Charleston and the city of Florence, in said State.

2. That on or about the      day of June, 1890, there was on the main line or track of the defendant's railroad, at a point within a mile of Ashley Junction, a station on said road, and leading off from said main line, a side track commonly known as a "Y" track, constructed for the purpose of connecting with the Charleston and Savannah Railway directly, to avoid the necessity of certain trains coming up to the junction; that side track or "Y" was connected with defendant's main line by a switch; and that within said side track or "Y," and leading out from it, is what is commonly known as a spur track, said spur track being also connected with the said "Y" track by a switch; and plaintiff alleges that it was necessary for the safe running of defendant's trains and the preservation of the lives of the passengers and employees of the defendant, that both of said switches, the one connecting the main line with the "Y" track, and the other connecting the "Y" track with the spur track, should be securely fastened and locked and properly cared for.

3. That on or about the ____ day of June, 1890, the plaintiff's intestate, George Patterson Reed, was in the discharge of his duty as a wood-passer on the engine and tender pulling a certain train of the defendant known as the Columbia special No. 53, bound from the town of Lane's to the city of Charleston, in said State; passing over the main line of the said defendant, and at the point where said "Y" switch is placed near Ashley Junction aforesaid.

4. That on said date the defendant carelessly, negligently, wrongfully, and unlawfully caused said "Y" switch, securing said "Y" track or siding, as well as the switch within the "Y" track securing the spur track, to be insecurely and improperly fastened and left open and uncared for, in consequence of which the said train of cars pulled by said engine and tender aforesaid, coming down on said main line or track at a greatly excessive and dangerous speed, without the engineer having his train under proper control or being prepared to stop, as required by the rules of the said company, when reaching said switch connected with the "Y" track aforesaid, through the defendant's negligence aforesaid, entered upon said "Y" track, and proceeding down the same entered upon the spur track, thus causing the engine and tender to be derailed, by reason whereof the said George Patterson Reed was instantly killed, while in the discharge of his duties aforesaid, through the negligence, carelessness, and wrong doing of the defendant.

5. That the death of the said George Patterson Reed was caused by the wrongful act, default, and negligence of the defendant, in the manner before mentioned.

6. That on the 1st day of August, 1890, letters of administration on the estate of the said George Patterson Reed were granted by the Probate Court for Florence County, in said State, to his wife, the plaintiff, Ophelia Reed, the said George Patterson Reed having died intestate and married, leaving surviving him his father, his mother, his wife, the plaintiff, Ophelia Reed, and four minor children, to wit: Alice, Julia, Thomas, and Daisey, one of whom, Thomas, has since died intestate and under age, and the father of said intestate having also since departed this life; and the said Ophelia Reed has duly qualified

7—37

as such administratrix and entered upon the discharge of said trust.

7. That the said Ophelia Reed and her minor children afore-said, to wit: Alice, Julia, and Daisey, had for her and their maintenance, comfort, and support during his lifetime a bene-ficial interest in the said life and earnings of the said George Patterson Reed, and by his death have been deprived of the aid, comfort, and support which he living had furnished and would furnish to her and them by reason of the income result-ing from his labor and services; and that by his death she and they, to wit: the said minor children and the mother of said intestate, have been injured to her and their damage ten thou-sand dollars; and, therefore, as administratrix as aforesaid, for the benefit of herself, the wife of the said intestate, and his three minor children, to wit: Alice, Julia, and Daisey, and the mother of the said intestate, the only persons designated by the statute to derive the benefit thereof, she, the said plaintiff, brings this action.

Wherefore she demands judgment against the defendant for ten thousand dollars and costs.

The defendant at the trial interposed the oral demurrer that the complaint did not state facts sufficient to constitute a cause of action. The Circuit Judge sustained the demurrer and dis-missed the complaint. After judgment, the plaintiff appeals to this court upon substantially these three grounds: 1. Whe-ther the statute commonly known as "Lord Campbell's act," as incorporated in the General Statutes of this State under section 2183, gives a cause of action to the personal representative of the deceased in cases when the death of the intestate was *instan-taneous.* 2. Whether, under the allegations of the complaint in this action, there is sufficient charge of negligence to sustain the complaint. 3. Whether the complaint was demurrable on the ground of action being brought in favor of the mother of the deceased as well as the wife and children, when both the wife and children were alive at the time of the institution of the action. [1]

---

[1] This was an additional ground taken by respondent in support of the result of the circuit judgment.—REPORTER.

1. We will first consider the question as embodied in the first proposition. There can be no question that, under the laws of this State as borrowed from the common law, in *torts* the right of action relating thereto died with the person injured. *Actio personalis moritur cum persona. Chaplin* v. *Barrett, Administrator,* 12 Rich., 284; *Huff* v. *Watkins,* 20 S. C., 480. But in cases like the present, namely, when it is alleged that a person whose services are owed to certain persons as a comfort or support to them, is killed while in the service of another, by the wrongful act of his employer, the legislation of this State has supplemented the provisions of the common law and given a right of action in behalf of certain kindred of the deceased. 12 Statutes at Large, 825. The remedy supplied by this legislation is evidently intended to be the adoption of what is known as "Lord Campbell's act," whose title was "An act for compensating the families of persons killed by accident." This remedy is now incorporated in the General Statutes of this State, in sections 2183, 2184, 2185, and 2186, in these words:

"SECTION 2183. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony.

"SECTION 2184. Every such action shall be for the benefit of the wife, husband, parent, and children of the person whose death shall have been so caused, and shall be brought by or in the name of the executor or administrator of such person; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and whose benefit such action shall be brought, and the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intes-

tate, and the amount recovered had been personal assets of his or her estate.

"SECTION 2185. All such actions must be brought within two years from the death of such person, and the executor or administrator, plaintiff in the action, shall be liable to costs in case there be a verdict for defendant, or non-suit, or discontinuance, out of the goods, chattels, and lands of the testator or intestate, if any, and if not, then out of the proper goods and chattels of such executor or administrator.

"SECTION 2186. The provisions of the three preceding sections of this chapter shall not apply to any case where the person injured has, for such injury, brought action, which has proceeded to trial and final judgment before his or her death."

The complaint in the case at bar alleges that the death of George Patterson Reed was instantaneous upon the receipt of the injury that caused his death, which occurred in June, 1890, while serving as wood-passer on the engine and tender that were thrown from defendant's railroad track on that date. The Circuit Judge held that no right of action accrued when the death was instantaneous, basing his opinion to that effect on a construction of the language of the act in question so far as the same related to the cause of action, and also to some expressions in the judgment of this court in the case of *Price* v. *Railroad Company*, 33 S. C., 562. There is no doubt but that this matter has been often and not harmoniously construed in the courts of this and the mother country. We prefer in this case to adhere to the principles laid down and the construction given to the act in question in the decision of this court in the case of *Price* v. *Railroad Company*, *supra*, and in doing so to over-rule those relating to these matters in the judgment of the Circuit Court.

This court, in the case just cited, announced that it was governed in its construction by the terms of the act. By those terms we hold, that there can be no doubt that it is the direct and palpable requirement of these statutory provisions that the recovery for the benefit of his family must be only in such cases as the deceased could have recovered if he had survived the accident. Any thing that would have defeated his recovery would defeat that in behalf of his family, in case he failed

to survive. To make our meaning perfectly plain just here—we hold, that any thing that would have defeated his recovery, if he had survived the accident—such as contributory negligence, a valid release, or similar acts on his part—would defeat the right of recovery in behalf of his family, in case of his death. The action brought for the benefit of his family must be limited to the character of the circumstances surrounding the deceased himself when injured. This being so, it makes no difference if the deceased was killed instantaneously or lingered an hour, a day, a month, or year, or two years, from the date of the accident; for if the defendant did not himself sue to judgment or release his right of action, then the right of action, as provided in the statute, remains for the benefit of his family. That the act requires the personal representative (administrator or executor) to sue, need not trouble us. The legislature could as well impose that duty on the sheriff or the coroner. The proceeds recovered are not for creditors, or the family generally, or for the legatees, but is strictly confined to certain members of the family of the deceased. We must sustain this ground of appeal.

2. When it is considered that, at the expiration of two years from the death of one by accident, his family lose the benefit of these provisions of the law made for their benefit in certain emergencies, it becomes very important to the party plaintiff that unusual care should be exerted in determining whether a cause of action has been sufficiently alleged in the complaint. If there is no such cause of action, a duty is owed to the defendant to say so. When a demurrer is interposed, it follows that, for the purposes of the action in trying that issue, all the facts set out in the complaint are admitted to be true. With this as a starting point, what do we find here alleged? That George Patterson Reed came to his death, while in the employment of the defendant company, in June, 1890; that such death was the result of the derailment of the engine and tender drawing a certain passenger train from Lane's to the city of Charleston, and that such derailment did not take place on the main line, but on a spur track, not to said main line, but a spur track to a "Y" line connecting the main track to and with the Charleston and Savannah Railroad; that the

switches to both the "Y" line and the spur track were care-
lessly, negligently, wrongfully, and unlawfully, by the defend-
ant, left open, insecurely and improperly fastened and uncared
for, so that the train of cars pulled by such engine and
tender left the main line through the switch on the "Y"
line, and thence over through the switch on to the spur track,
when it was derailed, thereby causing the death of the said
George Patterson Reed.

Now, whose duty was it to keep such switches carefully fast-
ened and kept shut? Certainly it was the duty of the defend-
ant, and if this accident occurred by reason thereof, was it not
unlawful, negligent conduct on the part of the defendant com-
pany? It seems to us that the Circuit Judge erred when he
stated that these switches were put there to be kept open. Cer-
tainly they were put there to be left open when the legal or
actual destination of said passenger train was to go upon said
spur track, but they were not put there to be left open so that
a passenger train should pass from the main line from Lane's
to the city of Charleston to a spur track. What is a "Y" track?
What is a spur track? A "Y" track, as we understand, is a
track leading from one railroad to another, so that an engine
and train may be reversed without being placed on a turn-table.
A spur track is a track that runs off from a main line or "Y"
track and comes to an abrupt ending, without any connection
with any other track at such ending, main, or "Y" line. At
any rate, it is alleged in the complaint that this death was the
result of the careless, negligent leaving open and unfastened
these two switches; and we are at a loss to understand how the
plaintiff's complaint should be considered as wanting in stating
facts sufficient to constitute a cause of action. We find the
Circuit Judge in error here.

3. We think the Circuit Judge committed no error in stating
that a defect in a complaint could be corrected, if it stated in-
accurately the number of beneficiaries or distributees of
the deceased, provided the complaint states amongst the
number of alleged distributees those who are entitled to
be so considered. To illustrate our meaning: when a complaint
states A, B, and C, the last two of whom are children of D, a

deceased person, but A is not, and alleges that the *children* of D are entitled to a fund, clearly A is an improper party. The complaint in such cases can be amended by omitting the name of A. The mistake of the plaintiff occurred in not giving full effect to section 2184, where it provides that the amount recovered shall be divided among the parties named in the act "in such shares as they would have been entitled to if the deceased had not died *intestate,* and the amount recovered had been personal assets of his or her estate." While the act limits the parties who could recover to wife, husband, parent, and children of the person injured, yet it requires that, in each particular case, the proceeds recovered shall be divided amongst those who would be entitled to take as distributees in case he had died intestate. Under our statute, in case there are widow and child or children, the estate of the intestates are divided amongst them. There, also, it is provided, if no child or children of intestate are alive at his death, that his father or mother, brothers and sisters and widow enjoy the estate. But by the act of 1859 (Lord Campbell's act), brothers and sisters do not take, but the parent (father or mother) take along with the widow, in case no child or children are alive at death.

4. Lastly, we will consider the point raised by defendant, respondent. It seems, as soon as complaint was filed, the defendant gave notice of a motion to be heard by Judge Izlar, to require the plaintiff to elect which cause of action set up in his complaint he would rely upon—whether the negligence of the defendant, or the negligence of the engineer in running his train at such speed that he could not stop his train at the switch on the main line through which the train passed. The Circuit Judge, Judge Izlar, denied the motion. We think he was in error. *Causes* of action may be embraced in the same complaint, but they must be stated separately. *Latimer* v. *Sullivan,* 30 S. C., 111. Here there were two causes blended. The plaintiff should have been required to make his complaint more definite, and inasmuch as two causes of action were blended, he should have been required to either set up both properly or elect which he would retain for trial.

It is the judgment of this court that the judgment of the

Circuit Court be reversed, and that the cause be remanded to the Circuit Court, with directions to require the plaintiff to make his complaint more definite, as herein indicated, and that he thereafter amend his complaint by omitting the name of the mother as one of the beneficiaries of the fund derived, if such should be the case, under this action.