### 11229

### ROBINSON v. SAXON MILLS

#### (117 S. E., 424)

1. CHATTEL MORTGAGES—MORTGAGE NOT STATING YEAR IN WHICH COTTON WAS RAISED HELD VALID AS BETWEEN ORIGINAL PARTIES.—A mortgage falling due on November 20, 1920, covering three bales of cotton weighing 500 pounds each, raised on a described farm, *held* a mortgage of cotton raised during that year and valid as between mortgagor and mortgagee, notwithstanding Civ. Code 1912, Sec. 4106, denying validity of a mortgage of crops other than the crops to be raised during the year in which the mortgage is given.

2. CHATTEL MORTGAGES—MORTGAGE OF ONE OF A NUMBER OF BALES OF COTTON TO BE GROWN ON DESCRIBED LAND HELD SUFFICIENT DESCRIPTION.—A description contained in a recorded mortgage of one 500-pound bale of good middling cotton to be grown on described land

---

NOTE.—As to who is real party in interest by whom action for trover and conversion must be brought see note in 64 L. R. A. 621.

*held* a sufficient description to charge the purchaser with notice, though mortgagor raised from seven to ten bales of cotton on the ·described land.

3. APPEAL AND ERROR—POINT NOT RAISED BELOW NOT CONSIDERED.— A point which was not raised in the trial below cannot be considered on appeal.

4. CHATTEL MORTGAGES—MORTGAGE COVERING COTTON OF STATED GRADE TO BE RAISED HELD NOT A MATTER OF DESCRIPTION, BUT ·A BASIS FOR EXTENT OF SECURITY.—Where a mortgage covered a 500-pound bale of good middling cotton to be raised on a described land, the grade was designated, not as a matter of description, but as a basis of security; mortgagee being entitled· to claim as much cotton as would have amounted in value to that grade and quantity.

5. ASSIGNMENTS—TORT ACTION AFFECTING PROPERTY ASSIGNABLE.—A right of action for a tort which has affected property may be assigned.

6. ASSIGNMENTS—ASSIGNMENT OF NOTE AND MORTGAGE HELD NOT TO CARRY WITH IT ASSIGNMENT OF RIGHT OF ACTION FOR A TORT.—An assignment of the notes and mortgages does not *ipso facto* constitute an assignment of a right of action for a tort, which had there-. tofore been committed in reference to the property covered by the mortgages.

7. TROVER AND CONVERSION—PLAINTIFF MUST SHOW TITLE OR RIGHT TO POSSESSION.—To maintain trover and conversion, plaintiff must show title or right to possession to the chattel at the time of the conversion.

8. APPEAL AND ERROR—ALLOWING PLAINTIFF AND ONE DEFENDANT TO AGREE AS TO COURSE OF THE TRIAL OVER ANOTHER DEFENDANT'S OBJECTION HELD PREJUDICIAL.—The action of the trial Court in allowing plaintiff and one defendant to agree as to the course of trial over the objection of codefendant, *held* preudicial error.

Before SEASE, J. Spartanburg, May 1922.   Reversed and remanded with instructions.

Action by L. E. Robinson against Saxon Mills and others. Judgment for plaintiff and the named defendant appeals.

*Messrs. Bomar, Osborne & Brown,* for appellant, cite: *What is sufficient description in chattel mortgages:* 5 R. C. L., 429, 427.   *Right of action for injury to property is assignable:* 20 S. C., 139; 112 S. C., 419.

*Mr. Cornelius Ott,* for Respondent, cites: *Description sufficient:* 105 N. E., 344; 115 N. W., 843; 6 So., 264; 94 S. C., 140; 100 S. C., 18. *Property torts may be assigned:* 20 S. C., 139; 67 S. C., 108; 99 S. C., 66; 2 R. C. L., 20 S. C. J., 889; par. 55. *No demand necessary:* 72 S. C., 458. *Identity of property was for the jury:* 68 So., 539.

May 14, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of the alleged conversation of a bale of cotton upon which the plaintiff claimed to hold a chattel mortgage, and which had been sold by the mortgagor to the Saxon Mills.

It appears that on January 8, 1920, Whitesides gave a note to Durroh for $313.33, due November 20, 1920, and to secure it executed a crop mortgage covering three bales of cotton, cotton seed, and certain live stock; that on January 2, 1920, Whitesides gave a note to McDowell for $125, due October 15, 1920, and to secure it executed a crop mortgage covering one bale of cotton, 50 bushels of corn, and a mule; that on January 8, 1920, Whitesides gave a note to Whitlock for $330 (maturity not stated in the record), and to secure it executed a crop mortgage covering certain personal property and all crops grown by Whitesides during the year 1920 upon his farm. The Whitlock mortgage was transferred to American National Bank, and upon it Whitesides paid $175.73 on November 1, 1920. All of these mortgages were duly recorded. During the year 1920 Whitesides cultivated a part of his farm and rented a part of it to one Golightly for one-third of the crop. Whitesides made from seven to ten bales of cotton, and so did Golightly. In the fall Whitesides, being heavily involved in debt, sold the cotton raised by him, the rent cotton which Golightly owed him, and three bales

of Golightly's own cotton, absconded, and has not been heard from since.

After this performance of Whitesides, the plaintiff, Robinson, with full knowledge of it, bought and had transferred to himself the Durroh note for $313.33 and the McDowell note for $125 on or about December 1, 1920.

Prior to this last-mentioned date, in October, 1920, the defendant Saxon Mills purchased from Whitesides two bales of cotton, No. 4598, weighing 471 pounds, and No. 4735, weighing 488 pounds, of the value of $100 each.

In December, 1920, the plaintiff instituted this action for conversion by Saxon Mills of said two bales of cotton, making Whitesides, McDowell, and Whitlock parties defendant also. The Saxon Mills answered, admitting the purchase of the two bales of cotton, but denied that the mortgages claimed by the plaintiff as assignee of Durroh and McDowell respectively were valid liens upon them. Whitlock answered, setting up his mortgage of $330, upon which $175.73 had been paid, leaving a balance due of $173.01.

The foregoing statement of facts is admitted in the record by stipulation of counsel, with the additional facts that the cotton purchased by Saxon Mills was raised upon the Whitesides farm in 1920, and that demand had been made upon Saxon Mills by the plaintiff, but none by the defendant Whitlock.

Upon the trial it was announced that an agreement had been entered into between the plaintiff and the defendant Whitlock that, if the verdict should be for the plaintiff, the amount would be divided between them upon a certain basis. The defendant Saxon Mills was not a party to this agreement and registered its objection to it.

As there is a controversy as to the validity of the description in the mortgages, they will be set forth in exact terms:

The Durroh mortgage:

"Three bales of cotton, weighing 500 pounds each, and the seed from same, raised on my place, consisting of 105 acres near Cherokee Springs, S. C., and bounded by lands of Wiley Parris, Mrs. Lizzie Wall, and Charles Landrum: also one black mare mule about seven years old named Ella; also two heifers, one dove-colored about 10 months old, and one about one year old of yellow color, and the increase from same. There is no other mortgage on any of the above property. All on my place."

The McDowell mortgage:

"One 500 pound bale of cotton, good middling, also 50 bushels of good sound corn, also one mare mule about seven years old, weight about 1,000 pounds, bought of Dan Pilgrim. The above cotton and corn is to be grown on my place, better known as part of William Thompson place, bounded by B. F. Williams, J. N. F. Blackwell, and others."

"[Certain personal property;] also all crops, cotton, cotton seed, corn, fodder, hay, grain, and produce to be grown by me or by others for me during the year 1920 on lands belonging to me, purchased by me from Mr. De Pass, situated Wolf school district, county and state aforesaid."

At the close of the evidence for the plaintiff, the defendant Saxon Mills made a motion for nonsuit, and, at the close of the entire evidence, a motion for a directed verdict in its favor, both of which were refused. The several grounds of these motions were the same as are hereinafter discussed in the disposition of the exceptions.

The jury rendered a verdict in favor of the plaintiff for $225.72, and from the judgment entered thereon the defendant Saxon Mills has appealed.

The contentions of the appellant are as follows:

(1) That the Durroh mortgage covers cotton already raised, and not cotton to be raised during the year 1920.

(2) That the McDowell mortgage is invalid on account

of the indefiniteness of the description of the mortgaged property.

(3) That the transfer of the two mortgages (Durroh and McDowell) to the plaintiff after the cotton had been converted by the Saxon Mills did not assign to the plaintiff the right of action based upon such conversion, the same being a tort.

(4) That the Circuit Judge erred in giving effect to the agreement between the plaintiff and Whitlock to combine their mortgage claims against Saxon Mills.

As to the first contention: So far as the cotton is concerned the description must be interpreted without reference to the concluding expression, "All on my place," which clearly has reference to the live stock covered by the mortgage. It is drawing a very fine bead to contend that the expression, "Three bales of cotton weighing 500 pounds each and the seed from same raised on my place," contains no element of futurity, and must be limited to three bales the mortgagor had then on hand. The well-known custom of the country and the evident intention of the parties show that the mortgagor meant cotton to be raised. But the year is not mentioned, and under the provisions of Section 4106, I Code of Laws A. D. 1912, which denies validity to a mortgage of crops "other than the crop or crops to be raised during the year in which said mortgage is given," to render such a mortgage valid, it is essential that the inhabition of the statute be negatived by naming the year. Inasmuch, however, as the note fell due on November 20, 1920, and authority to seize the mortgaged property if it should not be paid was given, it may well be concluded that the cotton to be raised in that year was intended to be mortgaged, and that as between Whitesides and Durroh it would be good.

Wheither or not it would be good against a purchaser of the cotton is a question not raised.

As to the second contention: The McDowell mortgage covers one 500-pound bale of good middling cotton, to be grown on the mortgagor's place, which place is sufficiently described. This mortgage, like the Durroh mortgage, makes no mention of the year in which the cotton is to be grown, and the observations made above in reference to the Durroh mortgage are applicable to this mortgage, so far as this suggestion is concerned.

The Saxon Mills, assuming that it bought a bale of cotton from Whitesides raised upon his place and belonging to him, insists that, as between it and the mortgagee, the description of the bale is too indefinite to constitute the mill purchaser with constructive notice of the mortgage by reason of the recording. They insist further that there is no evidence but that this was a bale of cotton that belonged to the tenant Golightly, or that it was "good middling" cotton as called for in the mortgage.

The evidence tends to show—in fact, it is so admitted in the record—that Whitesides raised on his own account during the year 1920 between seven and ten bales of cotton. The first question to be decided therefore is whether or not a mortgage upon one bale of cotton of a number of bales, as between the gortgagee and a purchaser without other notice than the recording, contains a sufficiently definite description to charge the purchaser with notice.

It is held in the case of *Brown v. Hughes,* 94 S. C., 140; 77 S. E., 730; that the description "one 500-pound bale of cotton to be grown in the year 1911 on the lands of H. in Oconee County" (describing the land), is not void for want of certainty. That was in a contest between senior and junior mortgagees, and the same rule would apply in a contest between the mortgagee and a subsequent purchaser. The distinction drawn in contests between the mortgagee and the mortgagor and between the mortgagee and a purchaser, adverted to in 11 C. J.,463, does not appear to have

received attention in the case, but it was necessarily involved, and until that case should be overruled the Court is bound to follow it.

It is next insisted by the appellant that there is no evidence tending to show that the cotton sold to the defendant was not the cotton of Golightly which the mortgagor unlawfully sold. We find no such position taken by the defendant in the trial below, and for that reason it cannot be considered.

It is also insisted by the appellant that the mortgage covered a 500-pound bale of "good midling cotton," and that there is no evidence tending to show that the cotton purchased by the defendant was of that grade. The grade was designated not as a matter of description, but as a basis of security. The mortgagee was entitled to claim as much cotton as would have amounted in value to that grade and quantity.

As to the third contention: It is unquestionably true that a right of action for a tort which has affected property, real or personal, may be assigned. *Miller v. Newell,* 20 S. C., 139; 47 Am. Rep. 833; *Ex parte Hiers,* 67 S. C., 108; 45 S. E., 146; 100 Am. St. Rep., 713; *Ex parte Jackson,* 99 S. C., 66; 82 S. E., 990; 2 R. C. L. 610; 5 C. J. 889. But that does not meet the question here, which is whether or not the assignment of the notes and mortgages *ipso facto* constituted the assignment of a right of action for a tort which had theretofore been committed in reference to the property covered by the mortgages; for conversion is tort. Here it appears that the conversion took place in October, 1920, and the assignments were executed in December following. The authorities are overwhelming that the plaintiff, to maintain trover and conversion, must show title or right to possession of the chattel at the time of the conversion.

In *Jones on Chattel Mortg.* (2d Ed.) § 510; it is said:

"A right of action for an injury to the property or to the mortgagee's rights does not pass by his assignment of the mortgage. Thus an assignee cannot sue for a conversion of property which has taken place before the execution of the assignment. The assignment passes all the mortgagee's right to the property, but does not pass his right to sue for a conversion of the property, or for injuries to it, while he was the legal owner of it."

In 26 R. C. L. 1131, it is said:

"In trover * * * the plaintiff must show that he has either a general or special property in the thing converted and the right to its possession at the time of the alleged conversion"—citing an array of authorities.

In 11 C. J. 671 it is said:

"In order to give the assignee a right of action for conversion of the mortgaged property, the conversion must have taken place after the assignment of the mortgage, since the assignment will not transfer such a right of action; nor will the assignment of a mortgage and the note secured thereby transfer to the assignee a right of action which the mortgagee may have against the Sheriff for the return of the property.

In 38 Cyc. 2044, it is said:

"He who seeks to recover in trover must prove that he was in actual possession of the chattel converted at the time of the conversion, or that he had the right to immediate possession thereof."

"Whenever proof of title is necessary to sustain plaintiff's case, it must appear that he held title to or had a general or special interest in the property in controversy at the time of the alleged conversion." 38 Cyc., 2045 (note), citing a number of cases.

In *Gilbreath v. Copeland,* 16 Ala., App. 220; 77 South, 58, it is said:

"The undisputed evidence shows that at the time of the alleged conversion and destruction of the lien Moon, and not the plaintiff, was the owner of the note and mortgage above referred to, and that the plaintiff's only claim to said cotton is based upon that note and mortgage which he re-acquired, by purchase * * * after the alleged destruction of the lien. The Court below therefore erred in refusing to give the affirmative charge requested in writing by the appellant."

In *Bowers v. Bodley,* 4 Ill., App. 279, there were two mortgages upon a crop of corn. The mortgagor delivered the corn to the senior mortgagee, who sold it. The junior mortgagee subsequently assigned his mortgage to another who brought trover against the purchaser from the senior mortgagee. It was held that conceding, as claimed by the junior mortgagee, that his mortgage was preferred to that of the senior mortgagee, the assignment of the junior mortgage did not convey with it the right to sue for a conversion antedating the assignment; that to maintain such an action the assignee must have been the owner or entitled to the possession of the property at the time of the conversion.

It follows, therefore, that the motion of the defendant for a nonsuit should have been granted, so far as the plaintiff's claims were concerned.

As to the fourth contention: It was manifestly prejudicial to the defendant Saxon Mills to allow the plaintiff and Whitlock to make an agreement as to the course of the trial, to which agreement the defendant was not a party and to which it objected.

The judgment of this Court is that the judgment of the Circuit Court be reversed, that the case be remanded to the Circuit Court, with instructions to order a nonsuit as to the plaintiff under rule 27 (90 S. E. xii), and that a new trial be had upon the claim of the defendant Whitlock,

with leave to the defendant Saxon Mills to reply to his answer.

MESSRS. JUSTICES WATTS and MARION, concur.

MR. JUSTICE FRASER, (dissenting). The statement in the case is:

"This action was begun in the Court of Common Pleas for Spartanburg County by service of summons and complaint in December, 1920. The original complaint was for conversion and was founded upon a chattel mortgage, dated January 8, 1920, given by J. J. Whitesides, one of the defendants, to David Durroh, another defendant, covering three bales of cotton weighing 500 pounds each and the seed from same; also one black mare mule about seven years old named Ella, two heifers, and the increase from same. The mortgage states that all of the property was on the mortgagor's place, consisting of 105 acres near Cherokee Springs. The case came on for trial in May, 1921, before Judge Sease and a jury, and plaintiff withdrew his suit by consent of the Court and obtained and order duly allowing him to amend. The amended complaint was duly served and is founded upon the chattel mortgage above referred to, and also another mortgage dated January 2, 1920, given by the same man, J. J. Whitesides, to one L. L. McDowell, for $125, payable October 15, 1920, and covering one 500-pound bale of cotton, good middling; also 50 bushels of good corn; also one mare mule about seven years old, weight about 1,000 pounds, bought of Dave Pilgrim; the above cotton and corn to be grown on the mortgagee's place in 1920. Both mortgages were duly recorded. In addition to the above named defendants, the amended summons and complaint included also L. L. McDowell and Wallace Whitlock as additional defendants, alleging that Whitlock claims an interest in the crops and was named as party defendant for that reason, but no judgment was asked against Whitesides, Durroh, McDowell or Whitlock. The plain-

tiff claimed to be owner of both mortgages by purchase after the maturity of each, and after Saxon Mills, the defendant upon whom judgment was sought, had bought the cotton and converted it into cloth.

"Saxon Mills denied liability on the ground that the mortgage of Whitesides to Durroh did not cover any crops to be grown in 1920, but covered only crops that were on the mortgagor's place when the mortgage was given on January 8, 1920. The complaint alleged that Saxon Mills had bought cotton that was grown by Whitesides in 1920. As to the other mortgage, given by Whitesides to McDowell, Saxon Mills contended that it could not be relied upon as a support for the plaintiff's claim, for the reason that it covered one 500-pound bale of good middling cotton, and there was no testimony whatever showing that Saxon Mills had gotten one pound of good middling cotton from the Whitesides place.

"The defendant Whitlock answered, setting up a mortgage given to him by Whitesides, dated January 8, 1920, and covering certain personal property and all crops of cotton, cotton seed, corn, fodder, hay, etc., to be grown by Whitesides or by others for him during the year 1920 on said farm. This mortgage was for $330, and had been duly recorded. The answer of Whitlock was served upon the defendant Saxon Mills on the day the case was tried, to wit: May 23, 1922. The case was tried before Judge Sease and a jury, and resulted in a verdict for the plaintiff for $225.72.

"Defendant Saxon Mills objected to the introduction of the mortgage to David Durroh. It also moved for nonsuit at the close of plaintiff's testimony, and later for the direction of a verdict in its favor, both of which motions were overruled by the presiding Judge. Against the objection of counsel for the defendant Saxon Mills, the presiding Judge permitted the jury to consider the claim of

the defendant Wallace Whitlock as if it also belonged to the plaintiff, and instructed the jury that the defendant Whitlock would be satisfied with a verdict in favor of the plaintiff."

I. The first assignment of error is that there was error in admitting the Durroh mortgage. This was error. The plaintiff claimed under a mortgage of the crop of 1920. The Durroh mortgage was executed on January 8, 1920, and covered cotton "raised on my place." and, after describing other chattels, says, "All on my place." So far as the record goes, the Courts would have to assume that Whitesides did not hold his cotton of 1919, in order so to construe the mortgage. It would have to supply the word "raised" and ignore the words "all on my place." No rule of construction permits such liberty with written instruments.

II. The next assignment of error is that the trial Judge did not declare a mortgage of "one 500-pound bale of cotton good middling * * * to be grown on my place" void for indefiniteness. Whitesides raised from seven to ten bales of cotton. The cases cited by the respondent of *Brown v. Hughes,* 94 S. C., 140; 77 S. E., 730; and *Livingston v. Railway,* 100 S. C., 18; 84 S. E., 303, are not authority here. In the first case it did not appear that there was more than one bale, and in the second the contest was about a verdict.

In 5 R. C. L. 5, pp. 426, 427, we find:

*"Property Described as Part of Quantity.*—Sometimes the subject-matter of a mortgage is described as a given number out of a large number of chattels of like character and description; as for instance, 50 mares, branded in a certain manner, out of larger herd. In such a case the Courts have sometimes held that the mortgage confers an implied power to select the designated number of chattels, and is not void for want of identity and description of the property mortgaged. But even under such a rule a

mortgage on a number of cows and their calves out of a herd cannot apply to the calves after the first year and after they have ceased to follow their mothers, as it then becomes impossible to identify them. It may be said to be the general rule, however, that such a mortgage is not good as against creditors of the mortgagor or others acquiring adverse rights, unless it furnishes the data for separating the mortgaged property from the mass of the articles. If it leaves the designation of the specific property mentioned therein resting exclusively in the minds of the parties, it fails to meet the purposes and requirements of the law, and is void for indefiniteness."

There was no means of identification of the mortgaged cotton suggested by the mortgage. The trial Judge said that the mortgage covered all the cotton raised by the mortgagor. It either did that or it covered nothing. The mortgage is void and covers nothing. The point is well taken.

III. The next assignment of error is that the plaintiff and one of the defendants were allowed to combine and the plaintiff was allowed to recover on the strength of the defendant's mortgage. We have been cited to no authority, and we know of none, that allows a judgment for the plaintiff, under the circumstances.

I think the judgement appealed from should be reversed.