Louis **SCHNEIDER**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant.**

Civ. A. No. 78–0941.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 3, 1980.

Solomon, Kahn, Roberts & Smith, Charleston, S. C., for plaintiff.

Sinkler, Gibbs & Simons, Charleston, S. C., for defendant.

## ORDER

BLATT, District Judge.

Prior to the institution of this action, the plaintiff herein and his wife had brought suit against one Lourdine J. Davis for personal injuries arising out of an automobile accident. The defendant herein, Allstate Insurance Company, had in effect at the time of the accident an automobile liability insurance policy for Ten Thousand Dollars ($10,000.00) covering the Davis automobile. Pursuant to that policy, Allstate undertook to defend Davis in the suit brought by the Schneiders. Plaintiff alleges that during the course of pretrial negotiations he offered to settle all claims for Nine Thousand Dollars ($9,000.00), but the defendant, representing Davis, would offer no more than Five Thousand Dollars ($5,000.00) in settlement. The case proceeded to trial, and plaintiff was awarded judgment in the sum of Sixty-Two Thousand Dollars ($62,000.00); his wife was awarded an additional Six Thousand Dollars ($6,000.00). Defendant Allstate has paid plaintiff Ten Thousand Dollars ($10,000.00), which amount plaintiff admits satisfies his wife's verdict in full, but plaintiff contends he is owed Fifty-Eight Thousand Dollars ($58,000.00) on the verdict which he recovered. After the judgment had been rendered against her,

Davis, the defendant in the original action, assigned to plaintiff "all of her rights and claims against Allstate Insurance Company, existing by reason of the negligence, bad faith, or other improper conduct of said insurer in failing and refusing to settle [plaintiff's] claim against [Davis] within the policy limits, by reason of which tortious conduct an excess judgment was rendered in favor of [plaintiff] and against [Davis]." Plaintiff brings this action against Allstate pursuant to the aforementioned assignment. The matter is now before this court on motion of the defendant to dismiss the suit on the grounds that the complaint fails to state a claim upon which relief can be granted, that Lourdine Davis is an indispensable party under F.R.Civ.P. 19, without whose presence the action cannot proceed, and that the plaintiff is not the real party in interest as required by F.R.Civ.P. 17(a). Underlying each of these grounds is Allstate's position that, under the law of South Carolina, Lourdine Davis' right of action against Allstate is not assignable and must, therefore, be brought by her and not by plaintiff Schneider.

To determine the assignability of the claim that Schneider now asserts against Allstate, this court must first establish from the pleadings whether Schneider has brought this action in tort or in contract. This court held in *Jolly v. General Accident Group*, 382 F.Supp. 265 (D.S.C.1974), that an action against an insurer for negligent failure to settle within policy limits may be brought either in tort for negligence or in contract for breach of the insurer's implied contract to exercise reasonable care in conducting the suit. That conclusion is supported by the *Tyger River* cases, which gave birth to this type of action in South Carolina. The following language is taken from the second *Tyger River* case, *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (1933):

"The following was quoted from the case of *Attleboro Mfg. Co. v. Frankfort, etc., Co.*, (C.C.Mass.) 171 F. 495: 'Where an insurer under an employer's liability policy on being notified of an action for injuries to insured's servant assumed the

defense thereof, and was negligent in conducting the suit, to the loss of the employer, the latter was entitled to sue the insurance company *for breach of its implied contract to exercise reasonable care in conducting the suit or in tort for negligence.'*" 170 S.C. at 291, 170 S.E. at 348 (emphasis added).

This court further held in *Jolly* that an action based on "negligence, bad faith, willfulness, and maliciousness" alleged an action in tort. 382 F.Supp. at 267. Schneider, in his complaint here, alleges entitlement to recovery "[b]y reason of Defendant's *negligence* in failing to conduct the negotiations for settlement with reasonable skill and diligence and its *failure to exercise good faith* to settle the action within the limits of the policy, and other *tortious conduct.* . . ." (emphasis added). This language, coupled with the fact that plaintiff Schneider asks for both actual and punitive damages, clearly indicates that plaintiff has elected to bring this action in tort; thus, the issue presented, for the purpose of defendant's motion to dismiss, is whether an action in tort against an insurance company for negligent, willful, or bad faith failure to settle within policy limits is assignable under the law of South Carolina.

 This court held in *Jolly* that such an action is assignable. It is the established law in South Carolina, and elsewhere as well, that a right of action is assignable if, and only if, the same action would survive to the assignor's personal representative in the event of the assignor's death. *Doremus v. Atlantic Coast Railroad Company*, 242 S.C. 123, 130 S.E.2d 370 (1963). The South Carolina Survival Statute, S.C.Code Ann. § 15–5–90 (1976), provides:

> "Causes of action for and in respect to *any and all trespasses to and upon real estate and any and all injuries to the person or to personal property* shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation any law or rule to the contrary notwithstanding." (emphasis added).

The decision in *Jolly* turned on the interpretation of the words "any and all trespasses to and upon real estate and any and all injuries to the person or to personal property." After a review of the relevant case law,[1] this court concluded:

> "In its effort to provide a liberal construction to the provisions of the Survival Statute without placing thereon a judicial construction to effectuate this court's conception of those causes of action which survive, [*Claussen v. Brothers*, 148 S.C. 1, 145 S.E. 539 (1928)[2]], this court is of the opinion, since the alleged negligent and willful acts of the defendants caused the assignor of the claim herein assigned to be subjected to a judgment of approximately $47,000.00 in excess of his insurance coverage, that the language of the Survival Statute warrants a holding that such judgment resulted in 'injury' to any property, real or personal, or any property interest, owned by said assignor. Because this excess judgment constitutes a lien against the assignor's real estate and makes any other property interest owned

1. This court noted in *Jolly*:

 "While the issue herein is novel in South Carolina, the annotation in 12 A.L.R.3d 1158, 1161, and the supplement thereto, reveal a number of cases which have decided this question. However, insofar as this court can determine, none of the cases cited therein involve a statute identical to the South Carolina Survival Statute and, thus, the cases noted in this annotation do not assist the court." 382 F.Supp. at 269 n. 2.

2. In *Claussen*, the Supreme Court of South Carolina enunciated the following rule concerning the Survival Statute:

 "While the act is remedial, and a liberal construction should be given to its provisions (*Morris v. Electric Co.*, 70 S.C. [279], 281, 49 S.E. [854], 855), we must resort, in arriving at the intent of the Legislature, to the actual words used in the statute, and the court should not place such judicial construction upon the language used as to effectuate its own conception of right rather than the intent of the Legislature." 148 S.C. at 4, 145 S.E. at 540.

by him subject to attachment and sale to satisfy this judgment, it is this court's conclusion that the alleged acts of the defendants did result in the type of 'injury' to the property interests or rights of the assignor that a claim based thereon would survive to the assignor's personal representative upon his death. Simply stated, this court cannot overlook the plain fact that the excess judgment rendered against the assignor has resulted in the value of any real or personal property, or interest of the assignor, being diminished to the extent of said judgment." 382 F.Supp. at 269. (original footnotes omitted).

Defendant Allstate now asks this court to abandon the position it adopted in *Jolly* and hold the assignment to plaintiff Schneider invalid.

Allstate asserts that this court, in *Jolly*, ignored the precedent of *Bemis v. Waters*, 170 S.C. 432, 170 S.E. 475 (1933). *Bemis* arose from the execution of a will, in which the residuary beneficiaries, five of the testatrix's children, sought to recover damages against their sister, a co-beneficiary under the will. The complaint alleged that the defendant had exercised undue influence to persuade the testatrix, during her lifetime, to convey certain real estate to the defendant, with the intention "to deprive the plaintiffs of their right to inherit the said real estate." 170 S.E. at 476. The complaint further alleged "[t]hat by her conduct as aforesaid, the defendant has deprived the plaintiffs of their right to inherit five-sevenths of said real estate, so obtained by the defendant, to their actual damage Six Thousand Four Hundred and Thirty ($6,430.00) Dollars, and that the defendant by reason of her aforesaid conduct, is liable to the plaintiffs in the sum of Five Thousand ($5,000.00) Dollars punitive damages also." *Id.* The South Carolina Supreme Court sustained the defendant's demurrer to the complaint, holding that the complaint had not stated a cause of action that would have survived the death of the testator.

The Court's holding was not, however, based upon a narrow reading of the Survival Statute, as Allstate asserts; rather, the Court's holding was based on a determination that the testatrix had never possessed the cause of action stated in the complaint during her lifetime. Thus, in *Bemis*, the Court held that the cause of action never existed,[3] not that it failed to survive. The Court said:

"If Mrs. Austin—[the testatrix]—had a cause of action against Mrs. Waters—[the defendant]—as, under the allegations of the complaint, she undoubtedly had, it was either in equity to have the deed to Mrs. Waters set aside, or it was for damages for the alleged fraud perpetrated upon her. But the complaint is not based upon either of these causes of action, although the theory of the complaint is that the plaintiffs derived their right to maintain the present action from the residuary clause of the will or by survival. In neither event can the position of the plaintiffs, respondents herein, be sustained, for the very simple reason that the cause of action set forth in the complaint, to the effect that the plaintiffs were deprived of their right to inherit from their mother by the conduct of the defendant, was never possessed by Mrs. Austin, and hence would neither survive her death nor be a subject of disposition under her will." 170 S.E. at 476.

Any discussion of the reach of the Survival Statute in *Bemis* is, in this court's opinion, as noted in *Jolly*, merely dictum; however, even this dictum does not evince a narrow interpretation of the Statute, as Allstate argues. The court, after deciding that the cause of action did not exist during the testator's lifetime, went further to state that, even if such a cause of action did exist, it would not survive the testatrix's death. This holding was based only upon the part of the Survival Statute that provides for the survival of "injuries to real property," as the Court said, "In this case, it

---

**3.** Obviously, a will which is of no legal force or effect until death cannot give rise to a cause of action in favor of the testatrix, either before or after her death; any cause of action under the will itself must be brought by the beneficiaries.

is not necessary to consider survival of actions relating to death, personal injury, or personal property, *but only as to real property.*" 170 S.E. at 476 (emphasis added). The Court's inquiry in *Bemis* was, therefore, limited "to the question as to whether or not Mrs. Austin, in her lifetime, had a cause of action against the defendant herein for and in respect to any and all injuries to real estate." 170 S.E. at 477. The Court's holding was simply that the alleged tortious undue influence exercised upon the testatrix by the defendant was not an injury to the testatrix's real property within the meaning of the Survival Statute; nowhere in the opinion did the Court indicate that it intended to make a restrictive interpretation of the Survival Statute as a whole. Indeed, *Bemis* is perfectly consistent with settled South Carolina law that causes of action grounded in fraud and deceit do not survive. Moreover, the Court's inquiry in *Bemis* involved only a part of the Statute, while this court's inquiry was not so limited in *Jolly*, nor is it in the instant case. This court held in *Jolly* that the encumbrance upon one's estate caused by the interposition of an excess judgment constitutes an injury to personal as well as real property.[4] Moreover, such a lien is an injury to real property in a way that the undue influence exerted against Mrs. Austin in *Bemis* was not. A lien on realty impairs its marketability, and thus its value, whereas the value of the realty in *Bemis* was not damaged despite conveyance of the realty to the defendant. For the foregoing reasons, this court does not believe that the decision in *Bemis* constitutes a threat to the vitality of this court's decision in *Jolly*.

The South Carolina Survival Statute must be viewed against the background of the common law. It is not true, as has occasionally been stated, *see, e. g., Bemis v. Waters, supra,* that no survival—or assignment—of choses in action was permitted at common law. Choses in action *ex contractu* have always been held to survive, *Myrick v. Lewis,* 139 S.C. 475, 188 S.E. 198 (1927);

*Huff v. Watkins,* 20 S.C. 477, 37 S.C.R. 204 (1883), and have been assignable, *see Miller v. Newell,* 20 S.C. 123, 37 S.C.R. 53 (1883); *Ware v. Key,* 13 S.C.L. (2 McCord) 373 (1823); *Forrest v. Warrington,* 2 S.C.Eq. (2 Desaus.) 254 (1804); *Parker v. Kennedy,* 1 S.C.L. (1 Bay) 398 (1795). Although not without some criticism, the common-law courts held that certain choses in action *ex delicto* survived as well. In *Nettles' Executors v. D'Oyley,* 4 S.C.L. (2 Brev.) 27 (1806), the Supreme Court held that a cause of action arising out of the negligent sale of the testator's land survived his death. In that opinion, the Court stated a general rule of survivability:

"The maxim, that 'actio personalis moritur cum persona,' as a general principle, is not correct; it is confined to those cases which arise ex delicto, and not ex contractu, and even then, is received under some restrictions. The distinction is, if the injury be such a one, as thereby the offender acquires no benefit to himself, at the expense of the sufferer, as battery, false imprisonment, slander, etc., there the person has only a reparation to be assessed, ad libitum, of a jury; but where, besides the crime, property is acquired, which benefits the testator, there an action for the value of the property survives against the testator." 4 S.C.L. (2 Brev.) at 30.

In *Chalk's Administrators v. McAlily,* 44 S.C.L. (10 Rich.) 92 (1856), Justice O'Neall criticized the former opinion, stating:

"The only case which in this State has gone counter to the English decisions, is that of *Nettles' Executors v. D'Oyley,* 2 Brev. 27.
It is difficult to conceive how that case could be sustained. For the injury there, arising from the sale of their testator's land by the neglect of the defendant, was a plain injury to real property; and according to all the English cases, no action could be maintained." 44 S.C.L. (10 Rich.) 93.

**4.** In *Jolly,* this court did not find, as Allstate contends, that a cause of action against an insurer for negligent or bad faith failure to settle a claim is itself property, real or personal.

The *Nettles'* rationale was later revived, however, in the context of assignments of choses in action, in *Miller v. Newell*, 20 S.C. 123, 37 S.C.R. 53 (1883). In holding a cause of action for slander unassignable, the Court made this distinction:

> "Can choses in action on torts be assigned? Torts, in their effects, may be divided into two classes, to wit: those which affect injuriously the estate, real or personal, of a party, and those which cause injuries strictly personal; those which survive to the administrator and those which die with the party injured. It appears that those which affect the estate may be assigned, but those of a personal character cannot. Neither can a contract, in which the personal acts and qualities of one of the contracting parties form a material ingredient, in general be assigned. 2 Chit. Cont. 1364. In reference to torts Mr. Chitty says: 'A distinction has, however, been taken between different classes of torts—those which cause injuries strictly personal being regarded as furnishing no assignable claim for damages; while the contrary is held as to those from which special loss has arisen to the estate of the assignor.'" (citations omitted) 20 S.C. at 139–40, 37 S.C.R. at 60.

It therefore appears that some causes of action in tort, specifically those for injury to property, may have been assignable even at common law. The advent of the Survival Statute broadened the class of tort actions that would survive the death of the injured party; this court does not feel that the Statute in any way narrowed the survival rights—or rights of assignment—already permitted under the common law. *Page v. Lewis*, 203 S.C. 190, 26 S.E.2d 569 (1943). *See Doremus v. Atlantic Coast Railroad Co., supra.* The cases decided since the passage of the Survival Statute have reaffirmed the distinction drawn in *Miller* between causes of actions for personal torts and those for injury to one's property, or estate. In *Robinson v. Saxon Mills*, 124 S.C. 415, 117 S.E. 424 (1923), the Supreme Court, citing *Miller*, said "It is unquestionably true that a right of action for a tort which has affected property, real or personal, may be assigned." 117 S.E. at 426. In holding that an action for libel does not survive, the Court, in *Carver v. Morrow*, 213 S.C. 199, 48 S.E.2d 814 (1948), approved the following language:

> "It is a rule of the common law, which has long been followed in this State unless changed by statute, that a *personal* action ex delicto dies with the person [citations omitted]. This principle is set forth in the old maxim 'actio personalis moritur cum persona.' This common law rule has been amended by legislative act in various instances, to cover certain designated actions for tort. Among others we find [Section 15–5–90], wherein it is provided that cause of action for injuries and trespasses upon real estate, and injuries to the person or personal property, shall survive. *It will be noted that the General Assembly was careful in not including actions for injury to character.*" 213 S.C. at 202, 48 S.E.2d at 816 (emphasis added).

This court noted in *Burt v. Abel*, 466 F.Supp. 1234 (1979), that it is extremely difficult to glean controlling principles from the cases construing the Survival Statute. "Why an action for a nervous breakdown caused by the publication of a false story is non-survivable, while an action for emotional upset caused by an auto-train collision does survive, is not readily apparent from the language of § 15–5–90, which expressly provides for survivability of 'causes of action for . . . all injuries to the person . . . any law or rule to the contrary notwithstanding.'" 466 F.Supp. at 1239. The South Carolina Supreme Court, in *Claussen v. Brothers*, 148 S.C. 1, 145 S.E. 539 (1928), cautioned against attempts to reconcile the Survival Statute with a court's own conception of right. *See* note 2, *supra.* The anomalies created by the Statute exist in areas where no survival was permitted at common law, such as the area of personal injury. However, this court is concerned in the present case, as it was in *Jolly*, with an injury to one's property, not to his person. As an injury to the estate of the insured,

the tort of the insurer here gives rise to the very type of action that was said to be assignable under the *Miller v. Newell* analysis; this court is not concerned with injuries to character, or other personal torts. The principle stated in *Miller* that causes of action for injuries to the estate are freely assignable has not been changed by the Survival Statute.

The Supreme Court in *Brewer v. Graydon*, 233 S.C. 124, 103 S.E.2d 767, 67 A.L.R.2d 524 (1958), recited the three exceptions to survivability under the Survival Statute, namely, malicious prosecution, (*Brown v. Bailey*, 215 S.C. 175, 54 S.E.2d 769 (1949)); slander, (*Carver v. Morrow, supra*), and fraud and deceit, (*Mattison v. Palmetto State Life Insurance Company*, 197 S.C. 256, 15 S.E.2d 117 (1941)). In the more than eighty-five years that the Survival Statute has been in existence, no other exceptions have been created. Thus, it may be inferred, as noted by the Fourth Circuit Court of Appeals in *Dean v. Shirer*, 547 F.2d 227, 229 (1976),[5] and by the distinguished present Chief Judge of the District of South Carolina in *Belcher v. S. C. Board of Corrections*, 460 F.Supp. 805, 807–08 (1978),[6] that these are the exclusive exceptions under the law of South Carolina. In its most recent statement on the scope of the Survival Statute, the South Carolina Supreme Court held that a cause of action for both actual and punitive damages for wrongful expulsion from a union in violation of the South Carolina Right to Work Law survived under the Statute. In that opinion, the Court noted:

"South Carolina Code § 15–5–90 provides that causes of action for and in respect to 'any and all injuries to the person or to personal property shall survive' to the personal representative of the deceased person. Although there are certain exceptions, it is the general rule that any cause of action which could have been brought by the deceased in his lifetime survives to his representative under the Survival Act. . . ." (citations and footnote omitted) *Layne v. International Brotherhood of Electrical Workers*, 271 S.C. 346, 352, 247 S.E.2d 346, 349 (1978). Survivability thus remains the rule rather than the exception under the law of South Carolina.

Accordingly, this court remains of the opinion that its holding in *Jolly* is consistent with the law of South Carolina, both past and present. Unlike a purely "personal" tort which basically causes damage to a party's character and reputation, a tort which results in an excess judgment being recovered against a party, as is here involved, causes injury, in this court's opinion, to that party's estate. Although the insured in the instant case, assuming the allegations of the complaint to be true, may have suffered some injury to his dignity, the vindication of which perhaps, under the present South Carolina law, could not be delegated to a stranger, the *principal* injury suffered by the insured was a pecuniary loss, or potential therefor, to his estate. Such a cause of action, this court feels, survives the death of the insured and is assignable under the principle announced in *Doremus, supra.* For the foregoing reasons, it is

ORDERED, that the motion of the defendant to dismiss the within action be, and the same hereby is, denied.

AND IT IS SO ORDERED.

5. "Exceptions to such survivability of actions for personal injuries are actions for malicious prosecution, slander, fraud and deceit. See [*Brewer, supra*].

*Brewer* cites malicious prosecution, slander and fraud and deceit as the exceptions to the statute and in the absence of a controlling South Carolina decision, no other exception being called to our attention, we give effect to the literal wording of the statute as we construe it and hold the cause of action survives as it may be equated to assault or false imprisonment." 547 F.2d at 229–30.

6. "The Code of laws of South Carolina provides for the survival of an action to recover for injuries to the decedent while he was alive. The *only exceptions* to the survival of causes of action are malicious prosecution; libel and slander; and fraud and deceit." 460 F.Supp. at 807–08 (citations omitted) (emphasis added).